(158 App. Div. 623.)

## MAHONY v. MAHONY.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

1. ACCOUNT STATED (§ 5*)—INFORMAL AWARD OF ARBITRATORS AS ACCOUNT STATED.

Where a cotenant agreed to leave to arbitration a dispute concerning an adjustment of rents and to pay his share, but the award of the arbitrators was not binding as an arbitration under the statute because not sufficiently formal, the award in connection with the oral promise to pay could not be upheld as an account stated; there having been no promise to pay subsequent to the award.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 16–29; Dec. Dig. § 5.*]

2. ARBITRATION AND AWARD (§ 7*) — SETTLEMENT — CONSTRUCTION OF AGREEMENT.

One of two cotenants who owned considerable real estate in common and had been partners, but between whom a dispute had arisen concerning the rents of the houses occupied by each and which had been owned in common but which they had lately partitioned, agreed to leave the matter to arbitration and to pay his share. An agreement for arbitration was executed, which recited that differences existed as to "the amount of rentals to be charged against us in our partnership accounts." The arbitrators made a report showing the rental values of the respective parcels, without making any addition of the items, striking a balance, or allowing interest. The parties had not at that time partitioned all of the property owned in common. Held, that the oral agreement should not be construed as a promise to pay the difference in the rents without regard to the partnership affairs, but that it was intended that the rentals were to be charged in the partnership accounts.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 28; Dec. Dig. § 7.*]

3. CONTRACTS (§ 245*)—ARBITRATION AGREEMENTS—MERGER OF ORAL AGREEMENTS.

In case of a conflict between an oral agreement to arbitrate and the written arbitration agreement, the oral agreement would be deemed merged in the written agreement.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1129, 1130; Dec. Dig. § 245.*]

4. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CAUSE—RENDERING FINAL JUDGMENT.

Under Code Civ. Proc. § 1317, authorizing the Appellate Division to render judgment of affirmance, judgment of reversal and final judgment, or judgment of modification, except where a new trial may be necessary or proper, when it may grant such new trial, and providing that where the trial has been before a jury the judgment must be rendered either upon special findings, the general verdict, or upon a motion to dismiss the complaint or to direct a verdict, where the trial court should have

granted defendant's motion to dismiss the complaint at the close of the evidence, the appellate court will do what the trial court should have done and dismiss the complaint.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from Trial Term, New York County.

Action by Eugene P. Mahony against Michael J. Mahony. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

John H. Rogan, of New York City, for appellant.

A. Delos Kneeland, of New York City (John Whalen, of New York City, on the brief), for respondent.

LAUGHLIN, J. This is an action on an assigned account stated for the equalization of the rental values of two houses owned in common by plaintiff's assignor and the defendant.

The defendant and the plaintiff's assignor, Daniel F. Mahony, were brothers and became partners as carpenters and builders in the city of New York in 1873 under the name of Mahony Bros. The partnership continued until the year 1900. It is contended on the part of the defendant that the partnership was dissolved and the copartnership affairs settled by mutual adjustment on the 9th day of July, 1900, and, while it is conceded on behalf of the plaintiff that the partnership business terminated at that time and that the business was thereafter continued by the plaintiff's assignor under the same name which he caused to be registered as a trade-name, it is denied that there ever was an adjustment of the copartnership affairs. At that time the partners owned considerable real estate in common. One of the parcels of real estate which was owned in common was a house and lot known as 126 West Eighty-Seventh street, which was purchased in 1889 and was occupied by the defendant exclusively, and another was a house and lot known as 464 West Fifty-Second street, which was acquired in 1890 and occupied exclusively by plaintiff's assignor. The account stated is with reference to an equalization of the rental value of these respective parcels during the time they were respectively occupied by defendant and plaintiff's assignor.

On the 23d day of March, 1907, the defendant and plaintiff's assignor executed an agreement in writing for the partition of ten parcels of real estate which they owned in common, including the two parcels the rental values of which are in question, and pursuant thereto and on the 26th day of the same month defendant conveyed an undivided one-half interest in said premises occupied by plaintiff's assignor to him, and plaintiff's assignor conveyed an undivided one-half interest in the premises occupied by defendant to him. The partition agreement contained the following provision:

"The rents of the said premises, insurance premiums and interest on mortgage, shall be adjusted, apportioned and allowed up to the day of taking title."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At the time of exchanging conveyances, the parties were unable to agree concerning the adjustment of the rents of the two houses which they occupied as stated. Plaintiff's assignor claimed that the defendant had had the use of property the rental value of which was much more than that of the premises which he had occupied. The evidence on the part of the plaintiff tends to show that on March 23, 1907, the plaintiff's assignor refused to execute the partition agreement until the parties arrived at an agreement concerning these rentals, and that thereupon the defendant agreed as follows, "I will have it left to arbitration and I will pay my share," and that plaintiff's assignor accepted this proposition. On the 26th day of March, 1907, the day on which the conveyances pursuant to the partition agreement were executed—but whether before or after the execution of such conveyances does not appear—plaintiff's assignor received from defendant a letter stating, so far as material to a decision of the question at bar, that:

"The differences as to the rentals of the houses which we respectively occupy will be adjusted by arbitration if agreeable to you and I will sign the necessary papers and I now name as my appraiser Richard S. Tracey."

The parties thereafter executed an agreement in writing for the arbitration of the questions which had arisen between them concerning the rental values of the premises. That agreement is not dated, and the evidence is very indefinite with respect to when it was signed. The evidence tends to show that it was drawn some time in the year 1907, but probably was not signed until the year 1908. It required that the award be made in writing and that it be delivered to one of the parties on or before the 5th day of May, 1908, and provided that if they should be unable to agree by that day they should appoint an umpire, and that the award should then be made on or before the 15th day of the same month. The arbitrators made a report in writing to the parties on the 1st day of May, 1908, in which they set forth the rental values and rent per annum of the respective parcels for the periods they were occupied by the parties respectively, and therein stated that they appraised, fixed, and awarded "to you respectively the rental values of the premises" occupied by the copartners respectively; but the report did not show the addition of these rentals, nor did it purport to strike a balance nor show any award of interest. By computations based on the report, however, it appears that the rentals charged to the defendant aggregate $24,600 (erroneously shown by the complaint to be $200 more), and to the plaintiff's assignor aggregate $14,575.20, the difference between which is $10,024.80, one-half of which sum being $5,012.40 (erroneously alleged to be $5,112.40), together with interest thereon from the date of the award the plaintiff seeks to recover.

The action is not based on the arbitration agreement, and it is conceded that the arbitration was not sufficiently formal to render the award binding as an arbitration under the provisions of sections 2365–2386 of the Code of Civil Procedure. The plaintiff alleges the award of the arbitrators as constituting the account stated, and his counsel, to sustain the recovery, relies on the prior parol agreement on the part

of the defendant to pay the amount awarded, and on the award to show the amount, and also on evidence that the award was delivered by the arbitrators to the attorney for the plaintiff's assignor and by him delivered to the defendant, who has retained it without objection. It is to be inferred that even after the partition of the 10 parcels of real estate the copartners remained tenants in common of other premises, for it appears that since that time they have partitioned other real estate of which they were tenants in common of the value of between $400,000 and $500,000, and at the time of the trial they still owned as tenants in common other real estate of about that value.

[1] The award supported by the parol agreement does not constitute an account stated. After the award there was no agreement on the part of the defendant to pay. The parol agreement therefore was merely a promise to pay an amount to be determined by arbitration, and, since the arbitration was not binding, it will not do to hold that there was an account stated on the theory that there was an implied promise to pay one-half of the rentals as the same might be found by the arbitrators.

[2] Moreover, it is quite clear that the parol agreement should not be construed as a promise on the part of the defendant to sever the rentals from the other copartnership matters and to pay the difference direct to the plaintiff's assignor in cash without regard to the copartnership affairs. At most it was intended by the agreement to have the amount, with which the defendant as a copartner was properly chargeable, determined by arbitration. This is made perfectly clear by a provision in the arbitration agreement which contains an express recital that "differences exist, and for a long time have existed," between the parties "as to the amount of rentals of the houses which we occupy to be charged against us in our partnership accounts."

[3] If the parol agreement and the arbitration agreement were not reconcilable, the former would be deemed merged in the latter; but we are of opinion that properly construed they are not in conflict. The evidence with respect to the dissolution of the copartnership in 1900 at most shows a division of the cash on hand at that time, and it is wholly insufficient to show a final settlement of the copartnership accounts; and, if it did, it at most relates to the carpentry and building business, and manifestly was not an adjustment of their copartnership or real estate adventures, as is evidenced by the making of the arbitration agreement. It is not necessary to decide whether the copartnership business to which reference is made in the arbitration agreement was the original carpentry and building business, or whether it relates to the real estate business. It is sufficient that the parties deemed that there were unsettled mutual accounts between them on which each of them was to be charged with the rental value of the house which he occupied. That, doubtless, accounts for the form in which the report of the arbitrators was made. Evidently they did not add interest or strike a balance for the reason that they supposed that these rentals were to be charged to the respective parties on the accounts

between them designated in the arbitration agreement as copartnership accounts.

[4] At the close of the evidence counsel for the defendant duly moved for the dismissal of the complaint on the ground, among others, that no account stated had been shown and that by the terms of the arbitration agreement the awards were to be charged to the accounts of the respective parties. In the view we take of the evidence the court should have granted that motion, and by virtue of section 1317 of the Code of Civil Procedure this court should now do what the trial court should have done.

It follows that the judgment and order should be reversed, with costs, and the complaint dismissed with costs. All concur.